IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSETTE S., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20-cv-4602 |
| v. ) | |
| ) | Magistrate Judge Jeffrey I. Cummings |
| KILOLO KIJAKAZI,[1] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Josette S. ("Claimant") brings a motion for summary judgment to reverse the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIBs"). The Commissioner brings a cross-motion for summary judgment seeking to uphold the decision to deny benefits. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §405(g). For the reasons described herein, Claimant's motion to reverse the decision of the Commissioner, (Dckt. #26), is granted and the Commissioner's motion to uphold the decision to deny benefits, (Dckt. #29), is denied.

**I. BACKGROUND**

**A. Procedural History**

On April 22, 2018, Claimant (then forty-six years old) filed an application for DIBs alleging disability dating back to March 12, 2012, due to limitations stemming from multiple

---

[1] In accordance with Internal Operating Procedure 22 - Privacy in Social Security Opinions, the Court refers to Claimant only by her first name and the first initial of her last name. Acting Commissioner of Social Security Kilolo Kijakazi has also been substituted as the named defendant. Fed.R.Civ.P. 25(d).

1

sclerosis ("MS"). (Administrative Record ("R.") 198). Claimant's application was denied initially and upon reconsideration. (R. 15). Claimant filed a timely request for a hearing, which was held on May 2, 2019, before Administrative Law Judge ("ALJ") Victoria A. Ferrer. (R. 30-71). Claimant appeared with counsel and offered testimony at the hearing. A vocational expert also offered testimony. On July 3, 2019, the ALJ issued a written decision denying Claimant's application for benefits. (R. 12-29). Claimant filed a timely request for review with the Appeals Council. The Appeals Council denied Claimant's request for review on June 4, 2020, (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner. This action followed.

**B.	The Social Security Administration Standard to Recover Benefits**

To qualify for disability benefits, a claimant must demonstrate that she is disabled, meaning she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Gainful activity is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §404.1572(b).

The Social Security Administration ("SSA") applies a five-step analysis to disability claims. 20 C.F.R. §404.1520. The SSA first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. §404.1520(a)(4)(i). At step two, the SSA determines whether the claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. §404.1521. An impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* In other words, a physical or mental impairment "must be established by objective medical evidence from an acceptable

medical source." *Id.*; *Shirley R. v. Saul*, 1:18-cv-00429-JVB, 2019 WL 5418118, at *2 (N.D.Ind. Oct. 22, 2019). If the claimant establishes that she has one or more physical or mental impairments, the SSA then determines whether the impairment(s) standing alone, or in combination, are severe and meet the twelve-month duration requirement noted above. 20 C.F.R. §404.1520(a)(4)(ii).

At step three, the SSA compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations ("the listings"). The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, she is considered disabled and no further analysis is required. If the listing is not met, the analysis proceeds. 20 C.F.R. §404.1520(a)(4)(iii).

Before turning to the fourth step, the SSA must assess the claimant's residual functional capacity ("RFC"), or her capacity to work in light of the identified impairments. Then, at step four, the SSA determines whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. §404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If the claimant cannot undertake her past work, the SSA proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform given her RFC, age, education, and work experience. If such jobs exist, she is not disabled. 20 C.F.R. §404.1520(a)(4)(v).

  **C.**   **The Evidence Presented to the ALJ**

Claimant seeks disability benefits due to limitations stemming from MS. (R. 198). She alleges a disability onset date of March 12, 2012. (R. 15). She presented the following relevant evidence in support of her claim:

1.     **Evidence from Claimant's Medical Records**

Claimant was diagnosed with MS on December 21, 2011. (R. 262). At that time, she "presented with slurred speech, gait instability, numbness in both legs knees down, and in her hands," as well as "trouble with dexterity." (*Id.*). Prior to her diagnosis, Claimant worked as a branch manager for Chase bank, but she went on disability shortly after her diagnosis. (R. 263). Claimant has "relapsing-remitting" MS, (R. 269), meaning that she has "flare-ups" or exacerbations of the disease, between which she has "periods of recovery, or remissions."[2]

On December 22, 2011, Claimant told her treating neurologist, Paul Bertrand, DO, that the numbness in her right arm had decreased significantly, as had the numbness in her feet. (R. 308). On December 29, 2011, Dr. Bertrand noted that Claimant was "doing somewhat better with her speech and with her right pronator drift." (R. 307). An MRI of Claimant's brain showed "some enhancing lesion" and "some un-enhancing lesion in the spinal cord." (*Id.*).

On February 23, 2012, Claimant was doing well, and an examination was "essentially unremarkable." (R. 306). On April 16, 2012, Claimant complained of fatigue, leg pain, and "heaviness" in her legs. (R. 303). Still, her examination was "entirely within normal limits," except for abnormal visual responses. (*Id.*). Claimant was again doing "relatively well" on July 17, 2012, and presented with normal gait, motor, sensation, and reflexes. (R. 302). On January 17, 2013, Dr. Bertrand again noted that Claimant was doing "relatively well regarding her MS" and was looking for employment. (R. 298).

Claimant experienced an exacerbation of her MS in December 2013, marked by slurred speech and difficulty walking. (R. 262). By July 25, 2013, Claimant was again doing "fairly

---

[2] Johns Hopkins Medicine, *Relapsing-Remitting Multiple Sclerosis* (Last Visited Feb. 16, 2023) https://www.hopkinsmedicine.org/health/conditions-and-diseases/multiple-sclerosis-ms/relapsing-remitting-multiple-sclerosis.

well," aside from complaints of intermittent weakness in her arms, neck pain, and fatigue. (R. 297). On February 24, 2014, and May 22, 2014, Dr. Bertrand reported that Claimant was doing well and had normal examination results. (R. 288-89).

Claimant began treating with neurologist Malathi Rao, D.O., on October 14, 2015. At her initial visit, Claimant reported that she had not experienced a flare-up since December 2014. (R. 262). Claimant was tolerating her medication well, despite flu like symptoms, injection site reactions, increased "symptoms of urinary incontinence," and trouble concentrating. (*Id.*). Claimant's residual symptoms were described as "gait imbalance, weakness with walking upstairs, [and] numbness and throbbing at the bottom of her feet," (*Id.*), but she presented with normal gait, speech, concentration, and attention, (R. 264), as well as normal strength and normal sensory reactions. (R. 265). In March 2016, Claimant again reported increasing numbness, tingling, and difficulty walking with burning in both feet. (R. 276). By December 7, 2016, however, she was doing well aside from getting fatigued earlier than usual. (R. 278). Her physical examination was normal. (R. 280).

Claimant next experienced a MS flare-up on September 25, 2017. (R. 282). Her symptoms included "feeling drunk," loss of balance, numbness in her hands and legs, and numbness and tingling in her face. (R. 332). She was prescribed a prednisone taper and steroids, which made her feel "somewhat better but not normal." (*Id.*). On October 18, 2017, and December 20, 2017, Claimant presented with hand weakness, mildly dysarthric/slurred speech, and a slow and slightly wide-based gait. (R. 335, 546). Her gait continued to deteriorate, and she eventually had to use a wheelchair. (R. 594).

On December 13, 2017, an updated MRI showed "multiple new lesions, some with residual enhancement." (R. 445, 547). On December 20, 2017, Matthew McCoyd, M.D.,

5

examined Claimant, concluded that her worsening MRI "represents treatment failure," and recommended that she switch therapies. (R. 547). He noted that Claimant was "at high risk for future clinical and radiographic relapses, and worsening disability from MS," and prescribed new medications. (*Id.*).

Claimant's date last insured was December 31, 2017. (R. 17). On June 26, 2018, she reported "feeling great" and "back to normal" following the new treatments. (R. 583). She had started walking again and was slowly increasing her distance. (*Id.*). In November and December of 2018, updated MRIs showed stable findings without evidence of new lesions. (R. 595, 606). On December 5, 2018, Claimant reported "feeling well," and Dr. McCoyd observed that her gait, coordination, and strength were back to normal. (R. 594).

### 2. Evidence from State Agency Consultants

State agency consultant Calixto Aquino, M.D., reviewed Claimant's file on May 29, 2018. He found Claimant had the severe impairments of multiple sclerosis, visual disturbances, and neurocognitive disorders. (R. 77). However, he noted that "[t]he claim is insufficient in evidence from a physical standpoint," (R. 76), and assessed no RFC restrictions, (R. 79). When assessing Claimant's subjective complaints, Dr. Aquino acknowledged that Claimant "does have severe [medically determinable impairments] present, however, based upon the evidence in file the limitations imposed would not prevent [Claimant] from being able to perform [substantial gainful activity]." (R. 79). State agency consultant James Hinchen, M.D., reviewed Claimant's file at the reconsideration level on October 9, 2018, and affirmed Dr. Aquino's findings. (R. 86).

State agency psychological consultant David Voss, Ph.D., reviewed Claimant's file on May 25, 2018. He noted that although Claimant alleged cognitive and memory issues, there was "insufficient information and no [mental status evaluation] to assess the severity of [Claimant's]

6

mental limitations prior to the [date last insured]." (R. 78). Dr. Voss assessed no mental RFC restrictions. State agency psychological consultant Joseph Mehr, Ph.D., reviewed Claimant's file at the reconsideration level on October 1, 2018, and affirmed Dr. Voss's findings. (R. 88).

**D.     The ALJ's Decision**

The ALJ applied the five-step inquiry required by the Act in reaching her decision to deny Claimant's request for benefits. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity between her alleged onset date of March 12, 2012, and her date last insured of December 31, 2017. (R. 17). At step two, the ALJ determined that Claimant suffers from the severe impairment of multiple sclerosis. (*Id.*). At step three, the ALJ concluded that Claimant does not have an impairment or combination of impairments that meet or medically equal one of the SSA's listed impairments, including 11.09 (multiple sclerosis). (*Id.*).

Before turning to step four, the ALJ determined that Claimant has the RFC to perform sedentary work with the following limitations:

> Lifting and/or carrying up to ten pounds; standing and/or walking for two hours in an eight-hour workday; sitting for six hours in an eight-hour workday; occasionally climbing ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climbing ladders, ropes, or scaffolds; frequently handle and finger with the right-dominant hand; no work at high exposed places; avoid work with hazardous machinery with external moving, mechanical parts; avoid work with sharp objects. [Claimant] is unable to meet the demands of fast-paced, high-production work, but is able to meet the demands of production rate pace in a shift.

(R. 18). Based on this conclusion, the ALJ determined at step four that Claimant was capable of performing her past relevant work as a banking manager/financial institution manager. (R. 23). Alternatively, the ALJ found that other jobs existed in significant numbers in the national economy that Claimant could perform given her age, education, work experience, and RFC, including the representative occupations of call out operator, address clerk, and document

7

preparer. (R. 24). Accordingly, the ALJ found that Claimant was not disabled from her alleged onset date through her date last insured. (R. 25).

## II. STANDARD OF REVIEW

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence is not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021), *quoting Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). The Commissioner's decision must also be based on the proper legal criteria and be free from legal error. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

A court reviews the entire record, but it does not displace the ALJ's judgment by reweighing the facts, resolving conflicts, deciding credibility questions, making independent symptom evaluations, or otherwise substituting its judgment for that of the Commissioner. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Instead, the court looks at whether the ALJ articulated an "accurate and logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether a claimant is

8

disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## III. ANALYSIS

The Court finds that the ALJ made two related errors that require reversal in this case. First, she failed to properly explain her decision to discount the findings of state agency consultants Drs. Aquino and Voss. Second, she failed to explain her finding that – despite the consultants' findings to the contrary – various RFC restrictions were supported by the medical record. These shortcomings leave the Court unable to meaningfully review the ALJ's findings and, therefore, require that the case be remanded for further proceedings.[3] *See Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994) (indicating that an ALJ must explain his analysis of the evidence with enough detail and clarity to permit meaningful review).

### A. The ALJ's assessment of the state agency consultants' findings was illogical and lacked evidentiary support.

The only medical professionals to assess Claimant's physical RFC were state agency consultants Drs. Aquino and Voss, who reviewed Claimant's file on May 29, 2018, and October 9, 2018, respectively. Both doctors found that Claimant had the medically determinable impairment of MS, and that it was severe. (R. 77, 87); *see also* (R. 79, 89) (noting Claimant "does have severe [medically determinable impairments] present"). Even so, they further found that the evidence in the record was insufficient "from a physical standpoint" to determine how

---

[3] Although Claimant does not explicitly raise these shortcomings, courts can *sua sponte* address issues in social security cases that a party has not raised. *See, e.g., Kristin S. v. Saul*, No. 19 C 1485, 2020 WL 4586115, at *7 (N.D.Ill. Aug. 10, 2020) (citing cases); *Mangan v. Colvin*, No. 12 C 7203, 2014 WL 4267496, at *1 (N.D.Ill. Aug. 28, 2014) (citing cases). Furthermore, in light of the Court's decision to remand, it need not address Claimant's remaining arguments related to the ALJ's step four and step five findings. *See DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("Because we determine that the ALJ did not properly evaluate DeCamp's limitations . . . we do not address DeCamp's other arguments."). The Court's decision in this regard is not a comment on the merits of Claimant's other arguments, which she is free to assert on remand.

9

Claimant's MS would restrict her activities. (R. 76, 86). Accordingly, they assessed *no* physical RFC restrictions and concluded that Claimant was "not disabled." (R. 79, 89).

The ALJ described the consultants' findings – and explained the weight she afforded them – as follows:

> [T]he state agency medical consultant(s) opined the claimant *did not* have a severe medically determinable impairment present prior to the date last insured of December 31, 2017. . . . However, records received after the DDS evaluations show that the claimant has MS and that she did have a significant flare in 2017 with some limitations. However, within several months the symptoms improved. Thus, the undersigned finds the DDS consultants' opinions are not supported by and not consistent with the medical evidence of record in its entirety as there is evidence of a severe impairment, to wit, multiple sclerosis.

(R. 22) (emphasis added). In making this assessment, the ALJ committed several reversible errors. First, she mistakenly asserts that the consultants found that Claimant did *not* have a severe medically determinable impairment when, in fact, both doctors repeatedly described Claimant's MS as severe. (R. 77, 79, 87, 89). "An ALJ's reasoning is flawed where it rests on a mischaracterization of the evidence." *Lourdes C. v. Kijakazi*, No. 19-cv-04543, 2022 WL 595310, at *7 (N.D.Ill. Feb. 25, 2022) (citing cases); *see also Adela I. v. Kijakazi*, No. 19-cv-3590, 2021 WL 6049972, at *8 (N.D.Ill. Dec. 21, 2021) ("[I]f the ALJ repeatedly mischaracterizes or minimizes the medical evidence on which a plaintiff's claim depends, how can he properly identify what work-related limitations stem from her impairments?").

Second, the ALJ never acknowledged the consultants' actual findings, which was that there was insufficient evidence to determine Claimant's RFC. Had she done so, she might have realized that *she* had insufficient evidence with which to assess Claimant's case, as discussed in section III(B), *infra*.

Third, the ALJ's assessment reveals a clear misunderstanding regarding what evidence was submitted following the consultants' reviews. (R. 22) ("[R]ecords received after the DDS

10

evaluations show that the claimant has MS and that she did have a significant flare in 2017 with some limitations. However, within several months the symptoms improved."). Contrary to the ALJ's assertion, Drs. Aquino and Voss evaluated nearly all of the medical files from within Claimant's disability period. (R. 73-74; 83-84). This included records documenting Claimant's MS diagnosis, her September 2017 flare-up, and the December 13, 2017 MRI documenting new lesions. (R. 76-77; 86-87) (list of evidence in the record at the time of the consultants' reviews).

In fact, the only evidence that the consultants did *not* have access to was evidence documenting Claimant's dramatic *improvement* in 2018. (R. 583) (June 26, 2018 note indicating that Claimant was feeling "great" and "back to normal"); (R. 594) (December 5, 2018 note comparing Claimant's "essentially normal" gait at present to her previously slow and wide-based gait that required her to use a wheelchair). Accordingly, the ALJ's finding – that the consultants' opinions were unsupported by the record because the evidence submitted post-state agency review showed that Claimant's condition was *worse than* the consultants believed – is contrary to the record. This shortcoming requires reversal, as ALJs are required to build a logical bridge from the evidence to their conclusions. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see also Mack v. Berryhill*, 16-cv-11578, 2018 WL 3533270, at *3 (N.D.Ill. July 23, 2018) ("While the ALJ was not required to adopt the state agency psychologist's opinion in its entirely, he was required to build a 'logical bridge from the evidence to his conclusion.'").

> **B.** **The ALJ impermissibly played doctor in assessing Claimant's RFC in the absence of any medical opinions regarding her limitations.**

The Court further finds that substantial evidence did not support the ALJ's RFC findings, as the record lacked any medical opinions regarding Claimant's functional capabilities. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) ("We . . . reverse an ALJ's determination only

11

where it is not supported by substantial evidence, which means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (citation omitted).

State agency medical consultants "are highly qualified physicians . . . who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 WL 374180, at *2. In this case, as noted above, the consultants concluded that there was insufficient evidence in the record to assess Claimant's functional capabilities. (R. 76, 86). In light of this finding, it is unclear how the ALJ – a non-medical professional – was able to deduce Claimant's functional limitations from a record nearly identical to that which the consultants deemed insufficient.

The state agency consultants' findings in this case suggest there was "insufficient [evidence] to determine whether [Claimant] was disabled," which would generally trigger the ALJ's duty to seek additional evidence. *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). "To remedy a lack of sufficient evidence – including a lack of medical opinions – the regulations encourage ALJs to recontact a claimant's medical sources, request additional existing evidence, ask the claimant to undergo a consultative examination at the Agency's expense, and/or ask the claimant or others for more information." *Shellie C. v. Kijakazi*, No. 1:21-cv-01791-MJD-SEB, 2022 WL 3152052, at *2-3 (N.D.Ill. Aug. 8, 2022); *see also Scott v. Astrue*, 647 F.3d 734, 741 (7th Cir. 2011) ("If the ALJ found this evidence insufficient, it was her responsibility to recognize the need for additional medical evaluations.").

Instead of pursuing any of those options here, however, the ALJ chose to rely on her own interpretation of the medical evidence to determine Claimant's RFC. This constitutes reversible error, as it is well established that ALJs "must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.

1996); *see also Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) ("ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Tobias B. v. Kijakazi*, No. 20-cv-2959, 2022 WL 4356857, at *5 (N.D.Ill. Sept. 20, 2022) ("Without any medical opinions in the record – whether from a state agency consultant or treating physician – it is unclear what the ALJ relied on in determining Claimant's RFC, aside from her own interpretation of medical evidence, which is an impermissible source.").

Furthermore, even if the ALJ had been qualified to interpret the medical evidence in the record to create functional restrictions, she failed to explain – as she was required to do – what evidence supported her various conclusions. *See, e.g., Briscoe ex rel. Taylor*, 425 F.3d at 351 (noting that the ALJ's failure to explain how he arrived at his conclusions was "sufficient to warrant reversal of the ALJ's decision."). For example, and as Claimant argues, the ALJ failed to explain her finding that Claimant is capable of frequent – as opposed to unlimited or occasional – handling and fingering. Claimant often reported numbness and weakness in both hands and no physician opined that Claimant could handle and finger objects on a frequent basis. (R. 43, 46-47, 262, 332, 567). The ALJ's other RFC findings – that Claimant can lift ten pounds, sit for six hours per eight-hour day, occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl – are similarly untethered to any record evidence.

On remand, the ALJ must cite evidence supporting her various RFC conclusions in order to build the requisite "accurate and logical bridge." *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 774-75 (7th Cir. 2022) (remand required where "[t]he ALJ did not explain how Jarnutowski could lift and carry up to 50 pounds and frequently lift or carry objects weighing up to 25 pounds"); *Barrett v. Barnhart*, 355 F.3d 1065, 1066-67 (7th Cir. 2004) (finding reversible error when ALJ determined that claimant could stand for two hours when no physician opined as

13

much and the ALJ cited no evidence to support this conclusion); *Adams v. Saul*, 412 F.Supp.3d 1024, 1028 (E.D.Wis. 2019) (finding the ALJ failed to provide the logical bridge from the evidence to his conclusion where he "failed to explain, with specific citations, how the evidence supports a limitation of frequent handling" and failed to explain "why handling is limited to frequent rather than occasional"). If such evidence does not exist – as the consultants' opinions suggest – the ALJ must seek additional medical evidence to determine what limitations are caused by Claimant's MS.

## CONCLUSION

For the foregoing reasons, Claimant's motion to reverse or remand the final decision of the Commissioner, (Dckt. #26), is granted and the Commissioner's motion for summary judgment, (Dckt. #29), is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**ENTERED:** March 13, 2023

**Jeffrey I. Cummings**
**United States Magistrate Judge**